| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:14-CR-129(4) |
| | § | |
| NICKY JOE HIGNIGHT | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Nicky Joe Hignight's ("Hignight") *pro se* Motion for Compassionate Release (#215), wherein he requests, for the second time, that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to his health problems, age, and the threat of Coronavirus Disease 2019 ("COVID-19").[1] The Government filed a response in opposition (#218), and Hignight filed a reply (#220). United States Pretrial and Probation Services ("Probation") submitted an updated report, which recommends the denial of Hignight's motion. Having considered the motion, the Government's response, Hignight's reply, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Compassionate Release Reconsideration

When a defendant moves for compassionate release, he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of

---

[1] Hignight initially filed a Motion for Compassionate Release (#206) on August 17, 2020, which the court denied on September 30, 2020 (#213). Accordingly, the court will construe Hignight's present motion as a motion for reconsideration of the court's September 30, 2020, Order.

18 U.S.C. § 3582(c)(1)(A)(ii). *Id*. at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id*. at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[2] *Id*.; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

In his initial motion for compassionate release, Hignight, age 61, asserted that extraordinary and compelling reasons for his release existed due to his medical condition, family circumstances, and the danger posed by COVID-19. In its Order, dated September 30, 2021 (#213), the court considered Hignight's medical condition, age, family circumstances, and the threat of COVID-19 and determined that his circumstances did not constitute an extraordinary and compelling reason warranting his early release from prison. The United States Court of Appeals for the Fifth Circuit subsequently held in *Shkambi* that when a defendant files a motion for compassionate release on his own behalf, the Sentencing Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. 993 F.3d at 392; *Cooper*, 996 F.3d at 287-88. Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13

---

[2] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13). Upon reconsideration, the court again finds that Hignight's medical condition, age, and the risk posed by COVID-19 do not suffice.

> A. <u>Medical Condition</u>

In his present motion, Hignight asserts that he suffers from "COPD, High Cholesterol, Depression, Hypertension, Asthma, and [Obesity]," in addition to being "a smoker for 35 years (1 pack a day)." Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, when interviewed in connection with his Presentence Investigation Report ("PSR"), prepared on August 7, 2015, and revised on October 15, 2015, Hignight reported that he suffered

from hemorrhoids, borderline diabetes, prostate problems, arthritis, hypertension, and back pain, but that he was only taking medication for his arthritis. According to Hignight's BOP medical records, he has been diagnosed with obesity, hyperlipidemia, major depressive disorder, mononeuropathy of lower limb, hypertension, chronic obstructive pulmonary disease ("COPD"), asthma, gastro-esophageal reflux disease, and an enlarged prostate with lower urinary tract symptoms. He is prescribed amlodipine and aspirin to control his hypertension; fluticasone, a mometasone furoate inhaler, and an albuterol inhaler to treat his asthma and COPD; atorvastatin for his hyperlipidemia; meloxicam to aid with his lower back pain; omeprazole for his acid reflux; tamsulosin and terazosin to treat his enlarged prostate; and venlafaxine to assist with his major depressive disorder. At the time of his PSR, Hignight was 5 feet, 8 inches tall and weighed 230 pounds, giving him a body mass index ("BMI") of 35, which indicates that he was obese.[3] Hignight's medical records reflect that he weighed 236 pounds on April 6, 2021, giving him a BMI of 35.1, confirming that he remains obese.

A medical note dated April 8, 2020, indicates that Hignight's hypertension, dyslipidemia, prostate problems, acid reflux, mental health issues, orthopedic problems, and asthma were "at goal." In his motion, Hignight claims that since he contracted COVID-19, he has "experienced severe diabetes, high blood pressure, and respiratory problems." Hignight was diagnosed with COVID-19 on November 19, 2020, and as of December 16, 2020, had recovered from the virus. Hignight has not been diagnosed with diabetes, and, as of April 22, 2021, had an A1c level of

---

[3] According to the Centers for Disease Control and Prevention ("CDC"), a BMI below 18.5 is underweight, a BMI between 18.5 and 24.9 is normal, a BMI between 25 and 29.9 is overweight, and a BMI of 30 or above is obese.

5.3%, indicating that he is not diabetic.[4] Further, Hignight's most recent blood pressure readings of 134/81 on August 6, 2021, and 137/86 on June 3, 2021, suggest that he is "at risk" of having high blood pressure.[5] Although Hignight now attributes his respiratory problems to COVID-19, on February 4, 2021, he informed medical staff that "[t]he dust in [the SHU] is worse than the housing unit. It is messing with asthma and making it hard to breathe." Moreover, on May 24, 2021, Dandan He, M.D., noted that Hignight "state[s] he takes [breathing treatments] 2-3 times a week and [they] really help[.]"

Furthermore, Hignight is classified as a BOP Medical Care Level 2 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."

None of Hignight's medical problems are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, Hignight's afflictions are well managed with medication. *See id*. The court acknowledges that, according to the CDC website, some of Hignight's underlying medical conditions—specifically, COPD, asthma,

---

[4] A hemoglobin A1c test is a method for measuring blood sugar. According to the CDC, a normal A1c level is below 5.7%, a level of 5.7% to 6.4% indicates prediabetes, and a level of 6.5% or more denotes diabetes.

[5] According to the CDC, a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

hypertension, and obesity—can make him more likely to become severely ill should he again contract COVID-19; nonetheless, such commonplace maladies do not make Hignight's case "extraordinary." *See id*. at 434.

According to the CDC, 45% of adults in the United States (108 million) have hypertension, and of those, only about 24% have their condition under control. Moreover, the CDC reports that 42.5% of the adult population in the United States is obese, more than 12% (29 million) has high cholesterol, 7.7% has asthma, and 6.4% has COPD. Due to their prevalence, hypertension, hyperlipidemia, obesity, asthma, and COPD cannot be deemed "extraordinary" in order to merit compassionate release. *See id*. (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *United States v. Thompson*, No. 3:18-CR-0573-B-11, 2021 WL 1966847, at *3 (N.D. Tex. May 17, 2021) (finding that a defendant's asthma, which was treated with an albuterol inhaler, did not rise to the level of extraordinary and compelling circumstances warranting compassionate release); *United States v. Holley*, No. 4:15-CR-265-4, 2021 WL 1581557, at *3 (S.D. Tex. Apr. 22, 2021) (denying compassionate release where the 28-year-old defendant claimed he had an increased risk of serious illness resulting from COVID-19 due to his asthma); *United States v. Hodgin*, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (denying compassionate release to inmate who suffers from hypertension, hyperlipidemia, arthritis, kidney disease, Type 2 diabetes, and several other medical conditions); *United States v. Slone*, No. 7:12-05-KKC-4,

2021 WL 164553, at *1 (E.D. Ky. Jan. 19, 2021) (holding that inmate who suffered from heart disease (for which he had a stent), chronic obstructive pulmonary disease (COPD), high cholesterol, obesity, and depression had not established extraordinary and compelling reasons for compassionate release as his condition was not terminal and did not diminish his ability to provide self-care within the prison environment); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. January 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Kroger*, No. 213CR00232JADVCF2, 2020 WL 5944421, at *2 (D. Nev. Oct. 7, 2020) (holding that the defendant's COPD did not constitute an extraordinary and compelling reason for compassionate release); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Murphy*, No. CR H-17-127, 2020 WL 5573262, at *3 (S.D. Tex. Sept. 17, 2020) (finding that the defendant had not established extraordinary and compelling circumstances when his "medical records demonstrate that he is receiving regular medical care and treatment for his COPD, and current conditions at [the facility where he is housed] do not create an elevated risk of his contracting COVID-19"); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5

(W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence); *United States v. Pagan Zapata*, No. 3:18-CR235-S, 2020 WL 4464660, at *1 (N.D. Tex. Aug. 3, 2020) (finding that the defendant's long term asthma, which was being treated with an inhaler, did not merit compassionate release); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

In his motion, Hignight claims that he has "been a smoker for 35 years (1 pack a day)." The court recognizes that Hignight's history of smoking, according to the CDC website, can make him more likely to become severely ill should he contract COVID-19. Nevertheless, the CDC reports that 14% of all adults in the United States (34.1 million) currently smoke cigarettes. Additionally, the CDC observes that "[q]uitting smoking cuts cardiovascular risks" and "1 year after quitting smoking, [a person's] risk for a heart attack drops sharply." Moreover, "[w]ithin 2 to 5 years after quitting smoking, [a person's] risk for stroke may reduce to about that of a nonsmoker's." Hence, having such a commonplace affliction does not make Hignight's case "extraordinary." Therefore, having a history of smoking is not sufficient to warrant compassionate release. *See United States v. Ramsey*, No. 2:14-CR-00296, 2021 WL 534470, at *5 (E.D. Pa. Feb. 12, 2021) (denying compassionate release to an inmate who had a history of smoking and hypertension); *United States v. Jones*, No. CR 02-0778, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) (finding that a history of smoking did not warrant compassionate release where the defendant provided "no detail regarding his tobacco usage" and presented "no ailments

associated with smoking and has been in federal prison since 2011, where smoking is banned"); *United States v. Brady*, No. CR 19-054-JJM-LDA, 2020 WL 7323366, at *3 (D.R.I. Dec. 11, 2020) (noting that "smoking history alone is not sufficient for this Court to find extraordinary and compelling grounds for release").

In this instance, Hignight's BOP records reveal that he is housed in general population, is ambulatory, is cleared for food service, and his most recent work assignment was as a kitchen helper. According to Probation, he is able to provide self-care in the institutional setting and is not limited in his activities of daily living. Thus, Hignight has failed to establish that his medical condition constitutes an extraordinary and compelling reason to reduce his sentence.

B. <u>Age</u>

Hignight asserts that he is eligible for compassionate release due to his age. While not binding on the court, the U.S.S.G. provides that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B). Here, according to Hignight's PSR, he is 61 years of age. Further, as discussed above, there is no indication that he is experiencing serious deterioration in his physical or mental health. Moreover, as of the date of his motion, Hignight had served 69 months of his 262-month sentence (or 26%).

According to the Administration on Aging, the population of persons in the United States over the age of 60 was 68.7 million in 2016, a 36% increase from 50.7 million in 2006, and was projected to increase substantially over the following decade. Hence, Hignight's age cannot be

9

deemed extraordinary.  Therefore, the court does not find that Hignight's age constitutes an extraordinary and compelling reason justifying compassionate release.

As an alternative to finding "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(ii) allows modification of a term of imprisonment for age-related reasons when:

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community as provided under section 3142(g).

18 U.S.C. § 3582(c)(1)(A)(ii).  Here, Hignight is only 61 years of age, which is less than the stated minimum age of 70.  Moreover, Hignight has not served at least 30 years in prison, and it does not appear that his sentence was imposed pursuant to § 3559(c).  Accordingly, Hignight also does not meet the statutory requirements for age-related compassionate release set forth in 18 U.S.C. § 3582(c)(1)(A)(ii).

### C. COVID-19

Hignight also expresses concerns regarding the spread of COVID-19 among the prison population.  Nevertheless, as of November 12, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,146) and 2 staff members at Federal Correctional Institution Texarkana ("FCI Texarkana"), the facility in which Hignight is housed, as having confirmed positive cases of COVID-19, 662 inmates and 113 staff members who have recovered, and 2 inmates who succumbed to the disease.  Indeed, according to Hignight's medical records, he tested positive for the disease, received treatment, and recovered from the virus.  Thus, it appears that the facility where Hignight is housed is handling the outbreak appropriately and providing adequate medical care.

Although Hignight expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Hignight, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Moreover, Hignight has not taken advantage of the mitigation measures available to him at FCI Texarkana. According to Hignight's BOP Case Manager, Hignight routinely walks around the facility and chooses not

to wear the masks that are provided to him and is usually seen without one. Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that the defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Hignight, have already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID-19); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020))); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26,

2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. According to the Government, the BOP has offered a vaccine to every inmate in BOP-managed institutions. To date, the BOP has administered approximately 246,259 doses of the vaccine. According to www.bop.gov, FCI Texarkana, where the defendant is housed, has fully inoculated 910 inmates and 158 staff members. Hignight's BOP medical records, however, reflect that he refused the Johnson & Johnson/Janssen vaccine on April 13, 2021, without any suggestion that it was medically contraindicated. Notably, courts have denied compassionate release where, as here, the inmate has refused the COVID-19 vaccine. *See United States v. Greenlaw*, No. 1:18-CR-00098-JAW-06, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) ("To reward [the defendant] for his vaccination refusal would create a perverse incentive for defendants like [the defendant] to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions."); *United States v. Pruitt*, No. 3:14-CR-0384-B-1, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021) (finding that the defendant "cannot refuse the vaccine to prevent against COVID-19 on the one hand and then argue for compassionate release because he faces an increased risk of severe illness or death should he contract COVID-19 on the other hand"); *United States v. Jackson*, No. CR 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021) (holding that because the defendant refused the COVID-19 vaccine, she "voluntarily declined to 'provide self-care' and mitigate her risk of a severe COVID-19 infection"); *United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (E.D. Mich. Mar. 25, 2021) ("Defendant cannot establish that his conditions are exceptional and demand

immediate release when he intentionally prevents the BOP from mitigating dangers to his health and safety."); *United States v. King*, No. 16-CR-478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("In declining vaccination[, Defendant] declined the opportunity to reduce his risk [of] exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *accord United States v. Braxton*, No. 4:16-CR-117, 2021 WL 1721741, at *5 (E.D. Tex. Apr. 30, 2021). Similarly, Hignight cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk, such as being vaccinated and wearing a mask.

    D.    <u>Rehabilitation</u>

Hignight further maintains that his post-sentence rehabilitation, evidenced by the courses he has taken and the programs he has completed establishes extraordinary and compelling reasons for compassionate release. While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence

14

reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act). Moreover, according to Probation, Hignight incurred a disciplinary infraction on February 1, 2021, for possessing drugs/alcohol in which he admitted to the violation when he was found in possession of homemade intoxicants. Accordingly, Hignight's behavior while incarcerated dispels the notion that he has reformed.

Thus, although Hignight lists a number of commendable achievements and laudable goals, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 4497476, at *4 (E.D. Tenn. Sept. 30, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction including multiple counts of armed bank robbery); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were

15

laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release). Similarly, the court hopes that Hignight will continue on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 at this time based on either his circumstances or his rehabilitation efforts. *See Lewis*, 2021 WL 4519795, at *3.

    E.    <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Hignight's offense of conviction entails his participation in a drug-trafficking conspiracy involving the distribution of between 500 grams and 1.5 kilograms of a mixture or substance containing a detectable amount of methamphetamine or between 50 and 150 grams of methamphetamine (actual). He supplied coconspirators with multi-gram quantities of methamphetamine for distribution to others and sold methamphetamine to a confidential source in controlled buys on several occasions. Methamphetamine and drug paraphernalia were discovered in his vehicle during a traffic stop, and methamphetamine, digital scales, as well as assorted tablets of prescription drugs were seized during the execution of a search warrant at his residence. Moreover, he was on state bond awaiting trial for manufacture and delivery of a controlled substance when he was arrested for his offense of conviction upon his

arrival at a coconspirator's hotel room to buy methamphetamine. In total, Hignight was held responsible for 2.912 to 4.032 kilograms of methamphetamine as part of the conspiracy.

Furthermore, Hignight has an extensive criminal history, which includes prior convictions for vehicle theft, possession of a controlled substance with intent to deliver methamphetamine in a drug free zone (2), assault, engaging in organized criminal activity, possession of drug paraphernalia, conspiracy to manufacture or distribute methamphetamine, and manufacture and delivery of a controlled substance. Hignight also has a history of poly-substance abuse dating from age 12, including the use of alcohol, marijuana, methamphetamine, and Xanax. He became addicted to methamphetamine at age 40 and is currently diagnosed as having a severe stimulant related disorder related to amphetamine. Therefore, the court cannot conclude that Hignight's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In these circumstances, granting Hignight compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id*. at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to

criminal conduct.'"  *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns").  In the instant case, releasing Hignight after he has served only 69 months (or approximately 30%) of his 262-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Hignight's track record is similarly a poor one.  There is no reason to believe that Hignight would not revert to drug-dealing and drug-abusing activities if released from prison at this time.

Furthermore, it is well settled that "compassionate release is discretionary, not mandatory."  *Chambliss*, 948 F.3d at 693.  Where, as here, a prisoner has engaged in "severe" criminal conduct and has a significant criminal history, the district court has discretion to deny compassionate release under the circumstances.  *Id.* at 693-94; *accord Keys*, 846 F. App'x at 276 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed] to a mere disagreement with the court's balancing of the § 3553(a) factors, which is not a sufficient ground for reversal").  Probation, after considering Hignight's documented medical prognoses showing no indicators of the immediate onset of any physical threats regarding his health concerns, his obvious failure to exercise simple precautions against the threat of

contracting COVID-19, and the minimal likelihood of contracting the COVID-19 virus within the unit at the current time, along with his role in the instant offense, his pattern of similar ongoing criminal behavior despite lengthy prison time, and the length of his sentence versus the minimal time he has served, recommends the denial of Hignight's motion.  In exercising its discretion, the court concurs with Probation's analysis and concludes that Hignight has failed to establish that his medical condition, his age, his efforts at rehabilitation, the presence of COVID-19, or other reasons constitute extraordinary and compelling reasons to release him from imprisonment at this time.

II.     Conclusion

Consistent with the foregoing analysis, Hignight's *pro se* Motion for Compassionate Release (#215) is DENIED.

SIGNED at Beaumont, Texas, this 12th day of November, 2021.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE